IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| NOAH GARCIA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 21-cv-00724-SRB |
| TRAVELERS PROPERTY CASUALTY, INSURANCE COMPANY OF AMERICA, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Before the Court is Defendant Travelers Property Casualty Company of America's ("Defendant") Motion for Summary Judgment. (Doc. #171.) For the reasons stated below, the motion is DENIED.

**I.  BACKGROUND**

For the purpose of resolving the pending motion, the following facts are uncontroverted or deemed uncontroverted by the Court.[1] The relevant facts are taken from the record, including the parties' briefs and exhibits. Only those facts necessary to resolve the pending motion are discussed below and are simplified to the extent possible. Additional facts relevant to the parties' arguments are set forth in Section III.

**A.  Plaintiff's Injuries and Treatment**

This case arises from a car accident involving Plaintiff Noah Garcia ("Plaintiff") on October 15, 2019, in Harrison County, Texas. Plaintiff, a resident of Leawood, Kansas, was

---

[1] On April 5, 2023, Defendant filed a Motion for Relief Under L.R. 56.1 Concerning Certain of Plaintiff's Responses to Defendant's Summary Judgment Statement of Facts. (Doc. #183.) After reviewing Defendant's Motion for Relief, the Court considered the following facts uncontroverted:1, 4–7, 10, 20, 25, 37, 41, 56, 58, 69–70, 71–74, 78–79, 86, 94, 96 102, 105, 108, 146, 149, 151–152, 156–157, 160, 163, 165, 167, 169, 170–172, 174, 192, 194, 197. This list is not an exhaustive list of facts deemed uncontroverted by the Court.

driving a rental car and traveling for work as an attorney for Kansas City Southern. While stopped, Plaintiff was rear-ended by an uninsured driver traveling 70 miles per hour. As a result, Plaintiff collided with two vehicles stopped in front of him. At the time of the accident, Plaintiff was wearing his seat belt and the car's air bag was deployed. A bystander called for help. Plaintiff was able to give this bystander his wife's telephone number, who informed Plaintiff's wife of the accident. Paramedics responded to the accident and "immobilized" Plaintiff on a "backboa[r]d C-collar." (Doc. #172-7, p. 1.) After the accident, Plaintiff was taken by ambulance to Christus Good Shepard Medical Center in Longview, Texas, where he was treated in the emergency room. Plaintiff was treated for a laceration to the head and concussion. Physicians noted:

> BYSTANDERS STATE PT WAS 'IN AND OUT' OF CONSCIOUSNESS PTA. . . . PT IS ALERT BUT HAS NO MEMORY OF INCIDENT AND DOES NOT KNOW WHERE HE IS. PT IS RESTRAINED. . . . PT RESPONDS TO MOST QUESTIONS WITH 'I DON'T KNOW'. PT REPEATS SAME QUESTION APPROX. Q 1 MIN. MANUAL C-SPINE CONTROLLED BY VFD. C-COLLAR APPLIED. PT EXTRICATED TO LONG SPINE BOEAR AND SECURED. NO GROSS TRAUMA NOTED ON INITIAL EXAM.

(Doc. #180-1, p. 2.)

Ultimately, Plaintiff was not discharged "due to his concussive symptoms." (Doc. #180-3, p. 5.) Physicians took CT scans of his head and spine, as well as x-rays of his chest and pelvis, which were "essentially unremarkable[.]" (Doc. #180-3, p. 5.) Plaintiff's Glasgow Coma Score was listed as 13 and 14.[2] After being released on October 17, 2019, Plaintiff returned home to Leawood, Kansas, via a car service.

---

[2] The Glasgow Coma Scale is a tool used to evaluate the severity of a traumatic brain injury. Scores can range from 0 to 15, with 0 indicating a severe trauma.

2

On October 24, 2019, Plaintiff was seen by a neurologist, Dr. Michael Rippee ("Dr. Rippee"), at The University of Kansas Hospital. Dr. Rippee diagnosed Plaintiff with a concussion and cervical strain, noting:

> [Plaintiff] had symptoms including lightheadedness, trouble with memory and recalling words, "static" in vision, fatigue, headache, neck pain, trouble sleeping, and a small amount of light & sound sensitivity.
>
> The headaches come and go–occurring about 2-3 times per day. They typically occur with thinking or reading. They last until he rests. They are over his temples and feel like a pressure.
>
> He is on a muscle relaxer from his PCP for his neck pain. He also notes this helps him sleep. He is wary of taking melatonin as it has caused bad dreams in the past and he is dealing with bad dreams since the MVC. He is scheduled to start cervical PT tomorrow. He is an attorney, but has not returned to work yet.

(Doc. #172-10, p. 6.)

On November 2, 2019, Plaintiff saw Dr. Rippee again, and reported that his symptoms were minorly improving but still present. For his symptoms, Plaintiff took medications and participated in physical and speech therapy. Plaintiff returned to work on November 4, 2019, and was restricted by Dr. Rippee to working four hours per day.

On November 11, 2019, Plaintiff traveled with his wife to Hollywood, Florida. Plaintiff's wife was attending a work conference that week, and Plaintiff traveled with her. During that trip, Plaintiff rested but had one dinner with his wife's colleagues. Plaintiff did not inform Dr. Rippee of his plans to travel. Dr. Rippee testified that, had he been informed of Plaintiff's travel plans, he wouldn't "necessarily recommend it but . . . wouldn't necessarily restrict it either." (Doc. #180-6, p. 64.) Dr. Rippee testified that airline travel "can exacerbate symptoms." (Doc. #180-6, p. 65.)

For 2019, Plaintiff's work performance evaluation rated that he exceeds expectations, and noted he took on additional responsibilities including presenting at conferences. On August 5, 2020, Dr. Rippee lessened Plaintiff's work restriction to working six hours per day. Plaintiff has

3

completed all job assignments given to him at work. Plaintiff believes he has continued to receive full compensation, supplemented by short-term disability and vacation benefits. Plaintiff has continued to take three-weeks of vacation per year. Plaintiff testified that his job is "probably safe," but that because he is "the retaliation lawyer" no one would tell Plaintiff they intend to terminate him due to his reduced work schedule. (Doc. #180-12, pp. 91–92.)

Dr. Rippee believes that although Plaintiff's symptoms have somewhat improved, "he remains quite symptomatic and continues with headaches, vision changes, cognitive complaints, and neck pain among others." (Doc. #180-6, p. 1.) Dr. Rippee does not think these symptoms will every subside "[g]iven the amount of time, amount of treatment, persistence of symptoms without significant improvement." (Doc. #180-6, p. 1.) Ultimately, Dr. Rippee doesn't "envision any substantial improvement" and believes Plaintiff's "remaining symptoms will be chronic and that future care will focus on management of symptoms rather than cure of cause." (Doc. #180-6, p. 1.)

Dr. Todd Silverman, a neurologist and expert witness hired by Defendant in this case, stated that "it is [his] opinion, to a reasonable degree of medical certainty, that [Plaintiff] suffered concussion and cervical strain" as a result of the car accident and that Plaintiff "now has prolonged post-concussion syndrome consisting of post-traumatic migraine, visual symptoms, mood disorder, and insomnia." (Doc. #172-38, p. 25.) Dr. Silverman found that Plaintiff does not suffer from any cognitive deficiencies, and that "[e]ffective treatment of the mood and sleep related symptoms could substantially improve cognitive efficiency and restore motivation, optimism and career potential." (Doc. #172-38, p. 25.)

Dr. Martin Zehr, a psychologist and expert witness hired by Defendant in this case, stated that it is his opinion, "to a reasonable degree of psychological certainty, that there is no current

4

objective evidence of cognitive deficits . . . which would . . . impair [Plaintiff's] ability to execute the routine responsibilities associated with his described professional duties." (Doc. #172-35, p. 8.) Dr. Zehr believed that the examination suggested "a clinically significant degree of depression" and that "there may well be a 'propensity towards stress and worry' with [Plaintiff] which warrants psychiatric consultation[.]" (Doc. #172-35, p. 8.)

Terry Cordray ("Cordray"), a vocational rehabilitation expert and expert witness hired by Defendant, reviewed Plaintiff's medical records and found "no objective information that [Plaintiff] is unable to perform his job at KCS Railway." (Doc. #172-36, p. 16.) Cordray also stated that he could not "give an opinion if [Plaintiff] should be limited in his work hours, or if he is unable to work a full-time job." (Doc. #172-36, p. 16.) Plaintiff has also been examined by other experts.

### B. Insurance Coverage of Plaintiff's Injuries and Treatment

Plaintiff's injuries and treatment are covered by an insurance policy issued to Plaintiff's employer, Kansas City Southern, by Defendant. Defendant was made aware of Plaintiff's claim on October 21, 2019. On November 21, 2019, Defendant informed Plaintiff they would not pay Plaintiff's claim until he finished treatment and all bills were submitted to Defendant. On June 23, 2021, Plaintiff made a demand of $5,000,000, the policy limit, to Defendant.

On October 5, 2021, Plaintiff filed the instant case against Defendant, alleging that Defendant is wrongfully refusing to pay full coverage of Plaintiff's claim. In Plaintiff's Amended Complaint, Plaintiff asserts the following causes of action: (I) breach of contract; and (II) violation of Mo. Rev. Stat. § 375.420, vexatious refusal to pay.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III. DISCUSSION

Defendant argues that it is entitled to summary judgment on Count II because (1) Plaintiff cannot show Defendant denied the claim; (2) Plaintiff cannot show that any refusal to pay was vexatious; and (3) the instant suit is a violation of the insurance policy. Each argument is addressed separately below.[3]

Missouri law provides that an insured may recover damages and attorney's fees when an insurance company refuses to pay for a "loss under a policy" if the company "has refused to pay such loss without reasonable cause or excuse." Mo. Rev. Stat. § 375.420. To prove a claim for vexatious refusal to pay, a plaintiff must show (1) they "had an insurance policy with" the insurer; (2) the insurer "refused to pay;" and (3) the insurer's "refusal was without reasonable

---

[3] The Court finds, and the parties agree, that Missouri law applies.
6

Case 4:21-cv-00724-SRB   Document 185   Filed 04/06/23   Page 6 of 10

cause or excuse." *Dhyne v. State Farm Fire and Cas. Co.*, 188 S.W.3d 454, 457 (Mo. banc 2006).

### A. Whether Defendant Denied a Claim

Defendant argues that it is entitled to summary judgment on Count II because "Travelers never denied the claim" and the parties only dispute "the extent of [Plaintiff's] damages." (Doc. #172, p. 61.) However, Defendant produces no case law indicating that, as a matter of law, a plaintiff cannot bring a vexatious refusal claim if the insurer has paid some, but not all, of the alleged loss. Defendant acknowledges that Plaintiff claims a loss under the policy that it has not paid. Therefore, Defendant's argument is denied.

### B. Whether Defendant Denial of the Claim Was Vexatious

Defendant argues that Plaintiff cannot show its conduct was arbitrary or "horseplay." (Doc. #172, p. 62.) Plaintiff argues there are genuine disputes of material fact that preclude summary judgment.

"[W]hether an insurer's refusal to pay is vexatious or not must be determined by the situation as present to the insurer at the time it was called on to pay." *Russell v. Farmers & Merchs. Ins. Co.*, 834 S.W.2d 209, 221 (Mo. App. S.D. 1992) (citation omitted). A refusal to pay is vexatious if "at the time it was asked to pay[,] was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." *Pace Properties, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 918 S.W.2d 883, 888 (Mo. App. E.D.) (citation omitted). "Generally, whether an insurer acted reasonably is a question of fact for the jury, and thus is improper for a court to determine in granting a summary judgment." *Welsh v. Nationwide Affinity Ins. Co. of Am.*, No. 17-CV-00090, 2017 WL 7037744, at *5 (W.D. Mo. Dec. 6, 2017) (citation omitted).

7

Upon review of the parties' arguments and the record, the Court agrees with Plaintiff. Defendant's arguments that it reasonably refused to pay Plaintiff's alleged loss revolve around one central point–"dueling medical viewpoints about Plaintiff's medical conditions." (Doc. #172, p. 65.) Both parties have presented experts that opine on the extent and severity of Plaintiff's injuries and symptoms as a result of the car accident.

Even assuming that, as Defendant argues, the time of the refusal to pay was when Plaintiff's five-million-dollar demand letter expired, Plaintiff had presented information from his "neurologist," "neuro psychologist," and "optometrist," among others, that he had suffered a traumatic brain injury and was suffering from ongoing symptoms. (Doc. #182, p. 7.) Ultimately, Defendant asks the Court to consider the fact that its experts find Plaintiff injuries less severe than claimed to establish, as a matter of law, that the denial of Plaintiff's claim is reasonable. However, the presentation of conflicting opinions creates a genuine dispute of material fact as to the extent of Plaintiff's injuries and the reasonableness of Defendant's denial. Considering the fact that "[g]enerally, whether an insurer acted reasonably is a question of fact for the jury," summary judgment here is denied. *Welsh*, 2017 WL 7037744, at *5.

### C.   Whether the Instant Suit Violates the Insurance Policy

Defendant argues that it is entitled to summary judgment on Count II because the instant suit violated a cooperation clause in the insurance policy. Plaintiff disagrees, arguing there are genuine issues of material fact that preclude summary judgment.

The policy states that "[n]o one may bring a legal action against [Defendant] under this Coverage Form until . . . [t]here has been full compliance with all the terms of the Coverage Form." (Doc. #172-29, p. 34.) Relevant loss conditions include "cooperat[ion] with [Defendant]

8

in the investigation or settlement of the claim" and "authoriz[ation] . . . to obtain medical records." (Doc. #172-29, p. 34.)

Defendant argues that Plaintiff violated the policy by suing Defendant before "giving Travelers a realistic opportunity to obtain full medical records." (Doc. #172, p. 68.) Defendant has produced evidence that it requested Plaintiff's medical records on December 20, 2019. Defendant claims that Plaintiff provided the records on April 2021, however, the parties dispute whether Plaintiff provided at least some medical records in 2020. The Court finds that this creates a genuine dispute of material fact.

Defendant also argues that Plaintiff failed to submit to examination, or gave insufficient time for Defendant to have him examined, by physicians chosen by Defendant before he filed suit, in violation of the policy. The insurance policy requires that Plaintiff "[s]ubmit to examination, at our expense, by physicians of our choice, as often as we reasonably require." (Doc. #172-29, p. 34.)

A review of the claim file notes produced by Defendant do not indicate that Defendant requested Plaintiff be examined by any doctors before Plaintiff sent his demand letter on June 21, 2021. On August 6, 2021, Defendant's attorney emailed Plaintiff's attorney to schedule examinations with two doctors hired by Defendant. On September 7, 2021, Defendant cancelled one of the schedule examinations due to the expiring demand letter. Further, on December 20, 2022, Peter Bloom testified that Plaintiff "cooperated with [Defendant] to the best of his ability," "was compliant with the terms of the policy," and was "always available to meet with [Defendant's] experts." (Doc. #172-2, p. 15.) The Court finds there is a genuine dispute of fact as to whether Plaintiff cooperated with Defendant's investigation. Defendant's argument is rejected.

9

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (Doc. #171) is DENIED.

**IT IS SO ORDERED.**

Dated: April 6, 2023

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE